# FILED

# UNDER

# SEAL

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | Case No.: 2:13-cv-00344-GMN-NJK |
| vs. ) | **ORDER** |
| INTELIGENTRY, LTD.; PLASMERG, INC.; ) PTP LICENSING, LTD.; and JOHN P. ) ROHNER, ) ) | |
| Defendants. ) | |

This action arises out of the Securities Act of 1933 [15 U.S.C. § 77q(a)] (the "Securities Act") and the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b)] (the "Exchange Act"), and is brought by Plaintiff, Securities and Exchange Commission ("SEC" or "the Commission") against Defendants Inteligentry, Ltd. ("Inteligentry"), PlasmERG, Inc. ("PlasmERG"), and PTP Licensing, Ltd. ("PTP Licensing") (collectively, "Rohner Companies"), and John P. Rohner ("Rohner") (collectively, "Defendants"). Before the Court is Plaintiff's *Ex Parte* Motion for Temporary Restraining Order (ECF No. 2) and Certification of Need to File Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief *Ex Parte* Without Notice to Defendants (ECF No. 4). For the reasons discussed below, the Motion will be **GRANTED** in part and **DENIED** in part.

## I.     BACKGROUND

Plaintiff alleges that Rohner is the founder, principal, and person who controls the Rohner Companies, and that for years Defendants have engaged in an ongoing fraudulent investment scheme that has defrauded at least 98 people nationwide and abroad out of at least

$1.4 million. (Compl. ¶¶1, 16, ECF No. 1.)  Plaintiff alleges that Rohner is a resident of Las Vegas, Nevada, and is the founder, President, Chief Executive Officer, Treasurer, and director of each of the Rohner Companies, which are Nevada corporations formed by Rohner in 2011 and 2012. (Compl. ¶¶12-15.)

Plaintiff alleges the following unlawful conduct by Defendants, in summary:

- Rohner, directly and through the Rohner Companies, solicited investors for the scheme by claiming on the Companies' websites, during in-person meetings, and over the telephone that he and his companies have developed, tested, and patented an operational "plasma engine" fueled by abundant and inexpensive noble gases, which Defendants claim will replace the internal combustion engine and can run for several months on a single charge of gas mixture at a cost of less than $1. (Compl. ¶2.)

- Defendants have lured investors into purchasing stock by claiming that the Rohner Companies' stock will be worth billions of dollars when the plasma engine is publicly revealed. To create a sense of urgency for prospective investors and to lull existing investors about the status of the purported engine development, Defendants have claimed for more than two years that the "final" engines that will be revealed to the public are weeks from completion, after which time Rohner company stock will be unavailable for purchase. (Compl. ¶3.)

- Contrary to the representations made to investors, and the statements currently appearing on the Defendants' websites, Rohner and his companies have never run an engine fueled by noble gases, nor have they obtained patents or trademarks relating to the engine or the plasma technology. Defendants have also made false and misleading statements to investors that Rohner received advanced degrees from the Massachusetts Institute of Technology ("M.I.T.") and Harvard University. (Compl. ¶4.)

- In addition, despite representations by the Defendants that all investor money will be used to bring the plasma engine to market, a significant portion of the money invested with the Defendants has been used for other purposes, including among other things the purchase of a home in Iowa for Rohner and his wife. (Compl. ¶5.)

- The fraudulent scheme is ongoing. Several people have invested in the Rohner Companies in the past few months and the Rohner company websites, which continue to make false and misleading statements, are current and active and invite investors to visit the companies and/or invest in the Rohner Companies. (Compl. ¶6.)

- The offer and sale of securities by the Defendants has not been registered with the Commission and is not eligible for an exemption from registration. (Compl. ¶7.)

Plaintiff alleges five causes of action:

1) Rohner, Inteligentry, and PlasmERG violated Sections 5(a) and 5(c) of the Securities Act of 1933;

2) Each defendant violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 [17 C.F.R. § 240.10b-5];

3) Rohner aided and abetted the Rohner Companies' violations of Exchange Act Section 10(b) and Rule 10b-5 [17 C.F.R. § 240.10b-5];

4) Each defendant violated Section 17(a) of the Securities Act of 1933 ; and

5) Rohner aided and abetted the Rohner Companies' violations of Section 17(a) of the Securities Act of 1933.

## II.   **LEGAL STANDARD**

Section 20(b) of the Securities Act of 1933 and Section 21(d) of the Securities Exchange Act of 1934 provide that the SEC may obtain a permanent or temporary injunction or restraining order without a bond upon a proper showing. 15 U.S.C. §§ 77t(b), 78u(d).  The statutes do not define what Congress meant by a "proper showing" so courts have turned to the standards for

injunctive orders within the Federal Rules of Civil Procedure. *See SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980).  Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Supreme Court has held that a preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

However, the SEC argues in this case that its "burden when seeking an injunction is lower than that of a private party," and that it "must demonstrate only: (1) a *prima facie* case that a violation of the securities laws has occurred; and (2) a reasonable likelihood that the violation will be repeated." (Mot. TRO, 7, ECF No. 2.)  As grounds for this argument, the SEC cites to a recent preliminary injunction order from the United States District Court for the Southern District of California, *SEC v. Schooler*, No. 12-cv-02164-LAB-JMA, 2012 WL 4761917, 2012 U.S. Dist. LEXIS 144777 (S.D. Cal. Oct. 5, 2012), and a pre-*Winter* opinion from *SEC v. United Fin. Grp.*, 474 F.2d 354, 358 (9th Cir. 1973), in which the Ninth Circuit

Court of Appeals held that the SEC's "prima facie case of the probable existence of fraud and mismanagement" was "sufficient to call into play the equitable powers of the court" for a preliminary injunction motion.

Likewise, the Second and Eleventh Circuits have authored pre-Winter decisions finding that the SEC is entitled to a preliminary injunction where it has only demonstrated (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975); *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999). The court in *Schooler* points out that, "the Second Circuit in *Mgmt. Dynamics* called it a 'crucial error' to 'assum[e] that SEC enforcement actions seeking injunctions are governed by criteria identical to those which apply in private injunction suits,'" and that "while injunctive relief in private actions is 'rooted wholly in the equity jurisdiction of the federal court,' SEC suits for injunctive relief are 'creatures of statute.'" 2012 WL 4761917, at *1, 2012 U.S. Dist. LEXIS 144777, at *4.

Although the authority cited by the SEC is not controlling, the reasoning in *Schooler* is compelling. This Court is not aware of a post-*Winter* SEC enforcement action where the *Winter* standard was applied. Pre-*Winter*, the Ninth Circuit recognized that such cases were treated differently holding that "[i]n statutory enforcement cases where the government has met the 'probability of success' prong of the preliminary injunction test, [courts] presume it has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public." *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992). Additionally, just as the passage of a statute implies a finding by Congress that violations harm the public leading to a presumption of irreparable injury, it follows that it would also lead to a presumption of the injunction being in the public interest. *See Schooler*, 2012 WL 4761917, at *1 n.2, 2012 U.S. Dist. LEXIS 144777, at *4 n.2.

The resulting effect of applying these two presumptions to satisfy the irreparable injury

and public interest prongs, is that the SEC is then only required to show that it is likely to succeed on the merits and that the equities tip in its favor.  However, there remains yet another difference in the standards used by the SEC for both these last two prongs in their boilerplate proposed order.  First, merely making a prima facie case is a much lower standard than showing a likelihood of success.  Furthermore, although a likelihood that the wrong will be repeated will factor into a determination that the balance of equities tips in the SEC's favor, the two are not necessarily equivalent.  Neither the SEC's motion nor the Order in *Schooler* present substantial justification for lowering the standard here in the context of an *ex parte* request for a Temporary Restraining Order as the *Schooler* decision involved a preliminary injunction where the defendant submitted a response and had an opportunity to be heard during the court hearing[1].

Nonetheless, despite this apparent lack of uniformity on the applicable standard, the Court need not decide the issue here, because the Court finds that the SEC meets the higher standard under the present facts.

## III.   DISCUSSION

As discussed below, the Court finds that the SEC has made a sufficient showing to establish a likelihood of success on the merits.  Likewise, the Court finds that the balance of equities tips in the SEC's favor and that an injunction is in the public interest because of the likelihood of repeated violations and the public's strong interest in preserving illicit proceeds of fraud.  However, the SEC has not provided sufficient justification for their request that the Court allow alternative means of service in relation to service of the complaint, the Motion for Temporary Restraining Order, and this Court's Order  upon Defendants .

### A.   Likelihood of Success on the Merits

Plaintiff argues that there is a substantial likelihood that it will prevail on its first claim

---

[1] While the *Schooler* Court does reference a prior TRO, it appears that the modified legal standard advocated by the SEC was only proposed or addressed during the preliminary injunction stage.

that Rohner, PlasmERG, and Inteligentry violated Sections 5(a) and 5(c) of the Securities Act. Those sections prohibit the offer and sale of unregistered securities. 15 U.S.C. §§ 77e(a) and 77e(c); *SEC v. Phan*, 500 F.3d 895, 901-02 (9th Cir. 2007).  To show a violation of Sections 5(a) and 5(c), the SEC must show that (1) there is no registration statement in effect as to the securities, (2) the defendant directly or indirectly offered or sold securities,  and (3) in doing so, the defendant used instrumentalities of interstate commerce. *See id*.; *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004).  Liability for Section 5 violations attach to the owners of the securities sold, anyone who personally solicits purchases from investors or offers from prospective buyers, and any individual who was a "'necessary participant' or 'substantial factor' in the illicit sale." *Pinter v. Dahl*, 486 U.S. 622, 642-43, 646-47 (1988); *Calvo* 378 F.3d at 1215.

The SEC has sufficiently made a prima facie case that Defendants violated Section 5(a) and 5(c) of the Securities Act.  In the exhibits attached to its motion, the SEC has demonstrated that no registration statement for any of the companies in question was ever filed with the SEC. Additionally, the exhibits indicate that offers for sale were published on Defendants' websites and that sales were executed for the purchase of "stock"—a security within the ambit of the Securities Act.  Finally, the exhibits indicate that sales were made through the means of interstate commerce, including the internet and the U.S. Postal Service, to investors in several different states as well as internationally.  Consequently, the Court finds that the SEC is likely to prevail on the merits of its Section 5 claims.

Additionally, Plaintiff argues that there is a substantial likelihood that it will prevail on its second and third claims that each defendant violated the antifraud provisions of the Exchange Act and the Securities Act.  Section 10(b) of the Exchange Act and its corresponding Rule 10b-5 prohibit the use of fraud or deceit in connection with the purchase or sale of a security. 15 U.S.C. § 77j(b); 17 C.F.R. § 240.10b-5.  Section 17 of the Securities Act prohibits the employment of fraudulent and manipulative devices, as well as the use of materially false or

misleading statements in connection with the offer or sale of securities. 15 U.S.C. 77q(a). The Supreme Court has held that the antifraud provisions of the Securities Act and the Exchange Act prohibit essentially the same conduct. *See United States v. Naftalin*, 441 U.S. 768, 778 (1979). The Supreme Court has also held that the antifraud provisions of the federal securities laws should be construed flexibly to effectuate their remedial purpose. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963).

False and misleading statements violate Section 17(a) and Section 10(b) of the Exchange Act promulgated under Rule 10b-5 if they are (1) material, (2) made with scienter, (3) made "in connection with" the sale of securities, and (4) employ the use of means or instrumentality of interstate commerce. 17 C.F.R. § 240.10b–5; *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). A misleading statement is material if a reasonable investor would consider the statement important to an investment decision. *Basic*, 485 U.S. at 231-32. Scienter is the mental state embracing an intent to deceive, manipulate or defraud and can be satisfied through a showing of reckless conduct. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-70 (9th Cir. 1990). The "in connection with" requirement is met if the fraud and the sale of securities coincide. *See SEC v. Zandford*, 535 U.S. 813, 822 (2002).

The exhibits attached to the SEC's motion evidence a number of misleading statements made by Rohner on behalf of his Companies. Rohner made statements to investors that he had a working plasma engine, that he had obtained patents on the technology and trademarks, that he had advanced degrees from Harvard and M.I.T., that the Rohner Companies and its intellectual property had specific valuations, and that invested funds were only used for legitimate business expenses. The SEC's exhibits evidence, however, that there never was a working plasma engine, there were no patents or trademarks registered, Rohner held no degrees from Harvard or M.I.T., that the valuations were fabricated, and that investment funds were used to purchase a

home and automobiles for Rohner and his wife, as well as pay for other personal expenses.

All of this information—the existence of a working prototype, the existence of patents, the personal qualifications of the CEO, the valuations of company assets, and the knowledge of how investment funds would be spent—would be extremely important to a rational investor. Further, the extent of the misrepresentations indicate that these statements were made with knowledge of their falsity and the specific intent to deceive, and that the statements coincided with offers and sales of securities and were published on the website where investments were solicited.  Finally, as previously discussed, Defendants employed the internet and the U.S. Postal Service to sell the securities.  Consequently, the court concludes that the misrepresentations were material, made with scienter in connection with the sale of securities, employing means and instrumentalities of interstate commerce.  Thus, the SEC is likely to prevail on its Section 10(b) and Section 17(a) claims.

### B.   Balance of Equities

Likewise, the balance of equities weighs in favor of an injunction.  "A preliminary injunction is an extraordinary remedy never awarded as a right." *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 688 (2008).  In deciding whether to grant a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  When the government is seeking an injunction and the "district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."  *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).  Additionally, "the public interest in preserving the illicit proceeds of [a defendant's fraud] for restitution to the victims is great. *Id*.

In securities fraud cases, courts must consider the reasonable likelihood of future violations and the resulting harm to the public. *See SEC v. Fehn*, 97 F.3d 1276, 1295-96 (9th

Cir. 1996); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). "The existence of past violations may give rise to an inference that there will be future violations." *Murphy*, 626 F.2d at 655. In assessing this likelihood, courts consider the totality of the circumstances and consider factors such as the degree of scienter, the recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the defendant's profession, and the sincerity of defendant's assurances against future violations. *Id.*

Here, the majority of the SEC's requested injunctions instruct the Defendant to obey the law. The harm of such injunctions to Defendants is non-existent as they are, and have always been, obligated to conduct themselves and their business in accordance with the law.

Of greater concern are the injunctions requesting the freezing of assets, expedited discovery, and alternative means of service. The private burden of these injunctions is great. However, Defendants have demonstrated a pattern of violations that establish the public's harm and interest in an injunction is greater. Defendants have been obtaining investments for a number of years and have persuaded at least 98 investors to contribute an aggregate of at least 1.4 million dollars. Plaintiff's exhibits indicate that these investments were acquired through substantial deceit. Additionally, Plaintiff has shown that investment transactions recently took place, indicating that the violations are on-going. Finally, Plaintiff has shown that Defendants have dispensed investor funds and used them on personal expenses. Accordingly, the Court determines that the public interest in preserving the investment proceeds is greater than the Defendants' burden resulting from an injunction. Further, the Court concludes that the level of deceit employed by Defendants indicates a danger of a potential attempt by Defendants to destroy or hide evidence and warrants expedited discovery processes. Accordingly, Plaintiff's Motion for Temporary Restraining Order is **GRANTED**.

However, the granting of Plaintiff's Motion notwithstanding, Plaintiff has not produced evidence or even argued that the Defendants cannot be served personally with the Complaint,

this Motion for Temporary Restraining Order and the Court's Order. Consequently, to the extent that Plaintiff's motion seeks alternative service as to those documents, the Motion will be **DENIED without prejudice**. Additionally, as Plaintiff has not provided sufficient basis for its requested departure from the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure regarding discovery included in its motion, this request is also **DENIED without prejudice**.

## IV.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion for a Temporary Restraining Order is **GRANTED**;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are prohibited from directly or indirectly participating in the issuance, offer, or sale of any security in an unregistered transaction; provided, however, that such injunction shall not prevent defendant Rohner from purchasing or selling securities listed on a national securities exchange;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants Rohner, Inteligentry and PlasmERG, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] by, directly or indirectly, in the absence of any applicable exemption:

(a)   Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or

medium of any prospectus or otherwise;

(b)   Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)   Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h];

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)   to employ any device, scheme, or artifice to defraud;

(b)   to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)   to engage in any act, practice, or course of business which operates or

1    would operate as a fraud or deceit upon any person;

2    **IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendant

3    Rohner and his officers, agents, servants, employees, attorneys, and all persons in active concert

4    or participation with him who receive actual notice of this Order by personal service or

5    otherwise are restrained and enjoined from aiding and abetting any violation of Section 10(b) of

6    the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R.

7    § 240.10b-5], by knowingly or recklessly providing substantial assistance to another person that

8    violates Section 10(b) of the Exchange Act and Rule 10b-5 by using any means or

9    instrumentality of interstate commerce, or of the mails, or of any facility of any national

10   securities exchange, in connection with the purchase or sale of any security:

11         (a)   to employ any device, scheme, or artifice to defraud;

12         (b)   to make any untrue statement of a material fact or to omit to state a

13         material fact necessary in order to make the statements made, in the light of

14         the circumstances under which they were made, not misleading; or

15         (c)   to engage in any act, practice, or course of business which operates or

16         would operate as a fraud or deceit upon any person;

17   **IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants and

18   their officers, agents, servants, employees, attorneys, and all persons in active concert or

19   participation with them who receive actual notice of this Order by personal service or otherwise

20   are restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. §

21   77q(a)] in the offer or sale of any security by the use of any means or instruments of

22   transportation or communication in interstate commerce or by use of the mails, directly or

23   indirectly:

24         (a)   to employ any device, scheme, or artifice to defraud;

25         (b)   to obtain money or property by means of any untrue statement of a

material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendant Rohner and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise are restrained and enjoined from aiding and abetting any violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] by knowingly or recklessly providing substantial assistance to another person that violates Section 17(a) of the Securities Act in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)   to employ any device, scheme, or artifice to defraud;

(b)   to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants and their officers, agents, servants, employees, family members, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any direct or indirect withdrawal, disposition, sale, transfer, pledge, hypothecation,

changing, wasting, encumbrance, assignment, dissipation, conversion, concealment, or other

disposal whatsoever of any funds, assets, securities, or other real or personal property, wherever

located, of defendants, and their subsidiaries and affiliates, whether owned by, controlled by,

managed by or in the possession or custody of any of them, including assets held in business,

corporate or partnership accounts in which defendants Rohner, Inteligentry, PlasmERG and

PTP Licensing have an interest, except as otherwise ordered by the Court.  This Order expressly

includes a prohibition on opening or causing to be opened any safe deposit boxes titled in the

name of, or subject to access by, any defendant;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, any financial or

brokerage institution or other person or entity holding or that has held at any time since January

1, 2009 any funds or other assets, in the name, for the benefit or under the control of the

defendants Rohner, Inteligentry, PlasmERG and PTP Licensing, directly or indirectly, held

jointly or singly, and wherever located, and which receives actual notice of this Order by

personal service or otherwise, shall:

Hold and retain within its control and prohibit defendants Rohner, Inteligentry,

PlasmERG and PTP Licensing and all other persons from withdrawing, removing, assigning,

transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise

disposing of any such account or asset except as directed by further Order of the Court;

Deny defendants Rohner, Inteligentry, PlasmERG and PTP Licensing and all other

persons access to any safe deposit box that is titled in the name of any defendant either

individually or jointly, or otherwise subject to access by any defendants;

Within three (3) business days of receipt of this Order, serve on counsel for the

Commission a statement setting forth the name and identification number of each and every

account or asset titled in the name, individually or jointly, of, or held on behalf of, or for the

benefit of, any.  With respect to each such account or other asset, the statement shall include the

balance in the account or description of the assets as of the close of business on the date of receipt of this Order, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted.  The statement shall also include the identification of any safe deposit box that is either titled in the name, individually or jointly, of any defendant or is otherwise subject to access by any defendant.  Service of such statement on counsel for the Commission shall be by express courier service or telefax directed to:

> **Kenneth Guido, Esq.**
> **Securities and Exchange Commission**
> **Mail Stop 5949**
> **100 F Street, N.E.**
> **Washington, D.C. 20549-5949**
> **Telephone: (202) 551-4480), or at**
> **Telefax: (202) 772-9282**

Upon request by the Commission, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

The foregoing provisions of this Section apply to, but are not limited to, the following presently known bank accounts held at the following financial institutions:

- **White State Bank – Acct. Nos. ending in: 187; 495**

- **Bank of the West – Acct. Nos. ending in: 2623; 8675; 7776; 1784; 1347; 8275**

- **Nevada State Bank – Acct. Nos. ending in: 5218, 5226; 5390**

**IT IS FURTHER ORDERED** that, pending further Order of the Court, the Commission may file Notices of Lis Pendens on all pieces of real property in which the defendants have an interest, in order to put the public on notice that these properties have been implicated in litigation in this Court.  Should the defendants wish to sell any piece of real property in which they have an interest, the defendants shall give counsel for the Commission notice of the proposed sale and seek the concurrence of the Court in the transaction prior to its consummation.  The defendants shall fully account for any proceeds received from the sale of such property to the Court and counsel for the Commission and the proceeds of such sales paid to the defendants shall be frozen pursuant to the provisions of this Order and submitted to the registry of the Court; and  the defendants are hereby prohibited from further encumbering their interests in any real or personal property by means of pledging it for collateral for any purpose or by allowing it to secure any obligation;

**IT IS FURTHER ORDERED** that, pending further Order of the Court, Defendants, their officers, agents, servants, employees, attorneys, accountants, depositories, banks, financial or brokerage institutions, providers of any services related to computing resources, the internet or electronic communications (including providers of electronic hosting or storage and of internet-based audio, video and/or written communications), and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are hereby restrained from, directly or indirectly, destroying, mutilating, altering, concealing, disposing of, transferring, or otherwise interfering in any manner with the Commission's access to any and all documents, books, records, correspondence, written communications, ledgers, accounts, statements, files, audio recordings, video recordings, and assets or other property of or pertaining to defendants, the allegations of the Complaint, or any investment program, wherever located and in whatever form, electronic or otherwise;

**IT IS FURTHER ORDERED** that within **three (3) business days** following the service

of this Order, each defendant shall:

1.      Provide the Commission with a verified, written accounting, signed by the defendant under penalty of perjury, of all funds, assets and liabilities including:  all real and personal property exceeding $5,000 in value, located both within and outside the United States, which are held by such defendant on their behalf, or under their direct or indirect control, whether jointly or singly, or in which they have an interest; all funds and assets that each defendant received from its investors and the ultimate use or current location of those funds or assets.  The accountings shall include a description of the source(s) of all such assets; and all bank, securities, futures and other accounts controlled by defendant, directly or indirectly, identified by institution, branch address and account name and number;

2.      Provide the Commission access to all records of the Defendant held by financial institutions located both within and outside the territorial United States by signing a Consent to Release of Financial Records in the form directed by counsel for the Commission; and

3.      Provide the Commission with a complete list of investors in the investment program alleged in the Complaint, including, without limitation, the names, addresses and telephone numbers of all persons who transferred funds to the defendant, if any, from January 1, 2009 to the present, and the amounts received, and whether or not those investors have received funds from defendants.  The accountings and investor list shall be filed with the Court and copies shall be delivered to: **Kenneth Guido, Esq.,  Securities and Exchange Commission, Mail Stop 5949, 100 F Street, N.E., Washington, D.C. 20549-5949 (telephone no. (202) 551-4480).**  After submission of the accountings and investor list, defendants shall each produce to the Commission, at a time and place agreeable to the Commission, all books, records and other documents called for in paragraph 2 above or that are supporting or underlying documents for their accountings;

**IT IS FURTHER ORDERED** that the SEC's request to dispense with the time periods,

notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure regarding discovery is **DENIED without prejudice** and may be filed separately as a discovery motion to be addressed by the Magistrate Judge assigned to this case.

**IT IS FURTHER ORDERED** that defendants shall show cause, if there be any, to this Court on **Thursday, March 21, 2013, at 2:30 P.M**. in **Courtroom 7D** of the United States District Court, 333 S. Las Vegas Blvd., Las Vegas, NV 89101, why this Court should not enter an Order preliminarily enjoining them from committing further violations of the respective provisions of the federal securities laws that defendants have been restrained from violating pursuant to this Order.  Defendants shall also show cause, if there be any, at that time why this Court should not continue against them the other relief imposed with respect to them by this Order;

**IT IS FURTHER ORDERED** that defendants shall file with this Court any opposing papers in response to Plaintiff's Motion for Preliminary Injunction no later than **Thursday, March 14, 2013, at 4:00 P.M**.

**IT IS FURTHER ORDERED** that the Commission shall have until **Monday, March 18, 2013, at 4:00 P.M.,** to file with the Court its Reply and serve them on the defendants by the most expeditious means available;

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission and email, upon any entity or person that may have possession, custody, or control of any documents or assets of defendants, or that may be subject to any provision of this Order, and, additionally, that representatives of the Commission are specially appointed by the Court to effect service.  Service of the summons, Complaint, Motion for Temporary and Preliminary Injunction or other process may be effected by U.S. Marshall or Deputy U.S. Marshall, or in accordance with Federal Rule of Civil Procedure 4.

**IT IS FURTHER ORDERED**, that to the extent Plaintiff's Motion seeks to obtain

permission for alternative means of service on Defendants for the Complaint, this Motion for Temporary Restraining Order, and this Order, it is hereby **DENIED without prejudice**. Plaintiff must provide this Court with justification for its request or serve Defendants in accordance with the Federal Rules of Civil Procedure with the Complaint, this Motion for Temporary Restraining Order and this Order.

     **DATED** this 7th day of March, 2013.

_____
Gloria M. Navarro
United States District Judge