1
2
3
4                    UNITED STATES DISTRICT COURT
5                         DISTRICT OF NEVADA
6                                 * * *
7   Securities and Exchange Commission,          Case No. 2:13-cv-00344-RFB-NJK
8                              Plaintiff,                    ORDER
9         v.
10  Inteligentry, LTD, et al.,
11                             Defendants.
12
13  **I.   BACKGROUND**
14        John P. Rohner ("Rohner"), a 71-year-old resident of Las Vegas, Nevada at the time the
15  complaint was filed, is the founder, President, Chief Executive Officer, Treasurer, and director of
16  Inteligentry, Ltd., PlasmERG, Inc., and PTP Licensing, Ltd.
17        Inteligentry, Ltd. ("Inteligentry") is a Nevada corporation Rohner formed in May 2011
18  with its principal place of business in Las Vegas.
19        PTP Licensing, Ltd. ("PTP ") is a Nevada corporation Rohner formed in March 2012
20  with its corporate agent in Las Vegas.
21        PlasmERG, Inc. ("PlasmERG") is a Nevada corporation Rohner formed in May 2011
22  with its principal place of business in Las Vegas (Rohner, Inteligentry, PTP, and PlasmERG are
23  collectively referred to as the "Defendants."  Inteligentry, PTP, and PlasmERG are collectively
24  referred to as the "Corporate Defendants.").
25        The Securities and Exchange Commission ("SEC") contends, and Defendants dispute,
26  that PlasmERG is the continuation of a company of the same name incorporated in Iowa in 2008
27  until its dissolution there in November 2011 ("PlasmERG-Iowa").  None of the companies is or
28  was registered with the SEC for the sale of securities.

The SEC alleges that for years Defendants have engaged in an ongoing fraudulent investment scheme that has defrauded at least 98 people nationwide and abroad out of at least $1.4 million.  Compl. ¶¶ 1, 16, ECF No. 1.  The SEC further alleges Rohner, directly and through the Corporate Defendants, solicited investors for the scheme by claiming on the companies' websites, during in-person meetings, and over the telephone that he and his companies have developed, tested, and patented an operational "plasma engine" fueled by abundant and inexpensive noble gases.  Compl. ¶ 2, ECF No. 1.  Defendants claimed that the "plasma engine" would replace the internal combustion engine and could run for several months on a single charge of gas mixture at a cost of less than $1. Compl. ¶ 2, ECF No. 1.  The SEC further claims that Defendants lured investors into purchasing stock by claiming that Rohner's companies' stock would be worth billions of dollars when the plasma engine was publicly revealed. To create a sense of urgency for prospective investors and to lull existing investors about the status of the purported engine development, Defendants claimed for more than two years that the "final" engines that would be revealed to the public were only weeks from completion, after which time Rohner company stock would be unavailable for purchase.  Compl. ¶ 3, ECF No. 1.  However, the SEC claims, Rohner and his companies never ran an engine fueled by noble gases, nor have they obtained patents or trademarks relating to the engine or the plasma technology.  Compl. ¶ 4, ECF No. 1.

## II. PROCEDURAL BACKGROUND

On Feb. 28, 2013, the SEC pleaded five claims in its Complaint against the Defendants. First, the SEC alleges Rohner, Inteligentry, and PlasmERG violated Securities Act sections 5(a) and 5(c) (15 U.S.C. §§ 77e(a) and 77e(c)) by engaging in the "sale or delivery after sale of unregistered securities" through interstate commerce or the mails.  Compl. ¶¶ 41–43, ECF No. 1.

Second, the Complaint alleges Rohner, Inteligentry, PTP, and PlasmERG violated Exchange Act section 10(b) and Rule 10b-5 (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5) by employing "manipulative and deceptive devices" in the sale of securities.  Compl. ¶¶ 44–47, ECF No. 1.

Third, the Complaint alleges Rohner aided and abetted Inteligentry, PTP, and PlasmERG in violating Section 10(b) and Rule 10b-5.  Compl. ¶¶ 48–49, ECF No. 1.

Fourth, the Complaint alleges Rohner, Inteligentry, PTP, and PlasmERG violated Securities Action section 17(a) (15 U.S.C. § 77q(a)) through their "use of interstate commerce for purpose of fraud or deceit."  Compl. ¶¶ 50–53, ECF No. 1.

Fifth, the Complaint alleges Rohner aided and abetted Inteligentry, PTP, and PlasmERG in violating Securities Action section 17(a) (15 U.S.C. § 77q(a)).  Compl. ¶¶ 54–55, ECF No. 1.

Simultaneously with the Complaint, the SEC filed, ex parte and under seal, motions for a temporary restraining order, preliminary injunction, and other orders.  ECF Nos. 2, 3.  On March 7, 2013, the Court granted the temporary restraining order.  Order 11, ECF No. 23.

On March 18, 2013, Rohner and the SEC jointly moved for the Preliminary Injunction. ECF No. 33.  The Court issued the proposed order the same day.  ECF No. 34.  In brief summary, the Defendants were enjoined from selling unregistered securities, committing fraud or employing deceit, or aiding another in doing so.  The Defendants were ordered to hold and maintain all assets.  They were denied access to financial assets, and their assets were frozen. They were prohibited from destroying records; and they were required to provide an accounting and all records to the SEC.  Order, ECF No. 34.

Presently before the court are sixteen motions.First, the SEC has filed a motion to dismiss, ECF No. 50, Rohner's counterclaim for "loss of business, unlawful detention of assets, unlawful detention of funds, restraint of trade, failure to inform and correct and prejudice," Countercl. 1, ECF No. 48.

Second, the SEC has moved to hold Rohner in civil contempt and for the appointment of a receiver to manage Inteligentry, PlasmERG, and PTP.  ECF No. 109.

Third, Inteligentry, PlasmERG, and PTP have moved to dismiss the second and fourth causes of action, violations of Section 10(b) and Section 17(a), against Inteligentry, PlasmERG, and PTP for failure to plead fraud with adequate particularity.  ECF No. 121.

Fourth, the SEC has moved for partial summary judgment against Rohner, PlasmERG, and Inteligentry on the first claim.  ECF No. 129.

1    Fifth, Rohner has moved to dismiss PlasmERG-Iowa as a party.  ECF No. 140.

2    Sixth, Inteligentry, PlasmERG, and PTP have moved for a release of $24,341.58 to pay

3    unpaid attorney's fees.  ECF No. 158.

4    Seventh, Rohner has moved to remove restraint order.  ECF No. 169.  In this motion,

5    Rohner also "removes his signature 'Joining' the SEC [ECF Nos. 33-1 & 33-2] on this action."

6    Mot. to Remove Restraint Order 1, ECF No. 169.

7    Eighth, Inteligentry, PlasmERG, and PTP's counsel has moved for instruction regarding

8    what to do with some seized property returned by the FBI to counsel's office.  ECF No. 178.

9    Ninth, Rohner has moved to hold the SEC in civil contempt "due to the SEC's willful

10    disobedience of the Court's Asset Freeze and Preservations Order issued as part of it's [sic]

11    Restraining Order . . . . As well as the courts [sic] order . . . stipulating a 'stay' and other

12    encroachments."  Mot. for Order 1, ECF No. 179.

13    Tenth, Rohner has filed a motion to dismiss "for lack of basis, proof of wrongdoing and

14    fact."  Mot. to Dismiss 1, ECF No. 183.

15    Eleventh, Rohner has moved for funds to be unfrozen to pay legal expenses and storage

16    costs.  ECF No. 184.

17    Twelfth, Inteligentry, PlasmERG, and PTP have moved for a release of $12,846.25 to pay

18    unpaid attorney's fees.  Mot. for Release of Funds, 6:13–14, ECF No. 215.  This is request is in

19    addition to the earlier motion, ECF No. 158, for $24,341.58.

20    Thirteenth, the SEC has moved for partial summary judgment on its second, third, fourth,

21    and fifth claims against Rohner, Inteligentry, PlasmERG, and PTP.  ECF No. 233.

22    Fourteenth, Rohner has filed a motion "to clarify PlasmERG, Inc (Iowa) status in this

23    case."  Mot. to Clarify 1, ECF No. 243.

24    Fifteenth, Rohner has moved to have the seized items returned to and held by the law

25    firm of Gordon Silver (counsel for the Defendant Corporations) be released to the investors' new

26    corporation.  ECF No. 246; see also Mot. for Instruction, ECF No. 178.

27    Sixteenth, Rohner has filed a Motion to Release Frozen Funds to Pay Attorney Fees, ECF

28    No. 257.

On December 1, 2014, the Court held a hearing on fifteen of these sixteen motions ("the Hearing"), [1] indicated its preliminary rulings and noted that a written order would follow This written order follows.

## III.   STATEMENTS OF LAW

### A.  Motions to Dismiss

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted).  The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (citations omitted).

Allegations of fraud or mistake in a complaint are exposed to heightened scrutiny.  In pleading such allegations, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The plaintiff must also "set forth what is false or misleading about a statement, and why it is false." Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations omitted).  Thus, claims of fraud or mistake

---

[1] Because the sixteenth motion, ECF No. 257, was filed one business day before the Hearing, it was not discussed at that time.

must meet Rule 8's plausibility requirement as well as Rule 9(b)'s particularity requirement. <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011).

## B. Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. <u>Johnson v. Poway Unified Sch. Dist.</u>, 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000), <u>citing</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

"In considering a motion for summary judgment, of course, the court decides a pure question of law and is not permitted to weigh the evidence or to judge the credibility of witnesses." <u>Neely v. St. Paul Fire & Marine Ins. Co.</u>, 584 F.2d 341, 344 (9th Cir. 1978). However, "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012) (second alteration in original) (internal citations

and quotation marks omitted).

### C. Civil Contempt

"District courts do, and must, have the authority to punish contemptuous violations of their orders."   Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1390 (9th Cir. 1995). Specifically,

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as **(1)** Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; **(2)** Misbehavior of any of its officers in their official transactions; **(3)** Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.  "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply."  In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002).

Civil contempt does not require willfulness and must be remedial or conditional, not punitive and unconditional, in nature.  United States v. Laurins, 857 F.2d 529, 534 (9th Cir. 1988).  "[I]n civil contempt, if the contemnor's actions subsequently are vindicated, the civil contempt must be vacated absent an opportunity for effective review of the order before it was violated." Britton v. Co-op Banking Grp., 916 F.2d 1405, 1411 (9th Cir. 1990).

## IV.   DISCUSSION

The motions will be discussed individually or, when applicable, as groups of related motions.  The rulings on these motions are intended to be consistent with the Court's findings and statements made on the record at the Hearing and should be construed so as to be consistent with those statements and findings.

**A. SEC's Motion to Hold Rohner in Civil Contempt and to Appoint a Receiver, ECF No. 109**

For the reasons given during the Hearing, the Court grants in part and denies in part the SEC's Motion to hold Rohner in Contempt and Appoint a Receiver.

The motion to appoint a receiver is granted.  However, as both Rohner and the SEC filed supplements after the Hearing substantially changing their positions regarding the appointment and role of a receiver, ECF Nos. 260, 263, and 265, the appointment of the Receiver is stayed pending a status hearing.

The motion to hold Rohner is Civil Contempt is denied.  However, Rohner is ordered to provide to the SEC disclosures in compliance with the temporary restraining order.  Rohner's submissions to date have been insufficient for compliance.

At the Hearing (and in his own motion to remove the restraining order, see infra section IV.B), Rohner claims that producing the required documentation is impossible, as he has neither the access to the documentation seized by the FBI nor the knowledge of where accounting information would be stored on the various servers seized.  The Court appreciates both the challenge Rohner faces in this endeavor and Rohner's desire not to perjure himself.

Consequently, the Court orders that Rohner shall instead produce documentation listing and describing 1) all personal and company assets that are currently in Rohner's possession, 2) all personal and company assets that were in Rohner's possession at any time after the order freezing assets or seizure of assets, and 3) all transactions and transfers of any assets to any other individuals or entities that took place after the order freezing assets or seizure of assets.  This includes any releases of property to former employees as a means of compensation.  This includes, but is not limited to, transfers to Sandra Fickas-Reisner and/or Control Systems Consulting.  This documentation should include and distinguish physical property, such as prototype engines or computers, and intellectual property, such as patent applications or trademarks.

Rohner shall submit this documentation to the SEC immediately if he has not already done so.  This documentation will be submitted under penalty of perjury, so if Rohner wishes to

1  assert any Fifth Amendment or other rights with respect to those statements, Rohner must do so

2  within the context of the disclosure or raise the issue with the Court prior to submission.

3       Rohner shall not dispose of, transfer, or attempt to sell any other assets, records, or

4  anything related to this case that could potentially fall under the seizure order.  Following the

5  appointment of the Receiver, Rohner shall have two weeks from that appointment to turn over

6  any other assets and documents from the operation of the business to the Receiver.

7

8  ### B. Rohner's Motion to Remove Restraint Order, ECF No. 169

9       As discussed in the Hearing and described below, the Court does not see any reason to

10  disturb its previous findings with respect to the restraining orders and consequently denies

11  Rohner's motion to remove restraint order.

12       On March 18, 2013, the SEC and the Defendants filed a joint motion for a preliminary

13  injunction and proposed joint stipulated order entering preliminary injunction and related relief.

14  ECF Nos. 33-1, 33-2.  On March 10, 2014, Rohner moved to remove this Preliminary Injunction

15  against himself as well as Inteligentry, PTP, and PlasmERG.  Mot. to Remove Preliminary Inj.,

16  ECF No. 169.

17       First, Rohner moves for removal of the Preliminary Injunction against Inteligentry, PTP,

18  and PlasmERG, on the grounds that, since Rohner cannot represent the corporate defendants, his

19  signatures joining these defendants and stipulating to the terms of the Temporary Restraining

20  order are invalid.  Mot. to Remove Preliminary Inj. 1–2, ECF No. 169.  Insofar as this motion

21  attempts to remove the temporary restraining order or Preliminary Injunction from Inteligentry,

22  PTP, or PlasmERG, the motion must be denied because Rohner cannot represent the three

23  corporate defendants as a legal advocate and therefore cannot move to challenge the validity of

24  his signing joint motions on their behalf.  If the corporate defendants, after the appointment of

25  the Receiver, wish to pursue such a challenge through counsel, they may do so through

26  appropriate motions.

27       Accordingly, the Court considers the merits of the motion as to Rohner only.   "[A]

28  district judge always has power to modify or to overturn an interlocutory order or decision while

it remains interlocutory." <u>Credit Suisse First Boston Corp. v. Grunwald</u>, 400 F.3d 1119, 1124 (9th Cir. 2005).  Such a motion to modify a preliminary injunction "is meant only to relieve inequities that arise after the original order" and not to "relitigate the issues underlying the original preliminary injunction order."   <u>Id.</u>   Here, Rohner complains that the Preliminary Injunction is "being misinterpreted by the SEC" and "is written in a bad and confusing way to normal people."  Mot. to Remove Preliminary Inj. 4, 6, ECF No. 169.

Rohner's motion raises several issues.  First, he avers that "[n]ot a single Allegation as sworn to the court, is backed by any Factual evidence."  <u>Id.</u> at 3 (emphasis omitted).  This (as well as the other attacks on the sufficiency of the SEC's evidence) is a request to relitigate the injunction and is consequently denied.

Rohner further argues that there is a dispute between the SEC and Rohner about what is meant by the storage requirements of the Preliminary Injunction.  <u>Id.</u> at 4.  In fact, both the SEC and Rohner have filed motions for sanctions regarding alleged violations of the Preliminary Injunction related to the retention and storage of assets.  <u>See</u> Mot. to Hold John P. Rohner in Civil Contempt and Appoint Receiver, ECF No. 109; Mot. for Order Holding SEC in Civil Contempt, ECF No. 179.  However, the Court finds that the Preliminary Injunction is neither ambiguous nor unclear on this matter.  The Preliminary Injunction describes the requirements using language both parties describe as communicating "clearly and unequivocally."  Rebuttal to SEC's Reply to Rohner's Opp. to Mot. to Hold Rohner in Contempt and Appoint a Receiver 3, ECF No. 126;  SEC's Mem. in Support of Mot. for Order Holding Rohner in Civil Contempt and Appointing a Receiver 3, ECF No. 110.

> Defendants and their officers, agents, servants, employees, family members, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any direct or indirect withdrawal, disposition, sale, transfer, pledge, hypothecation, changing, wasting, encumbrance, assignment, dissipation, conversion, concealment, or other disposal whatsoever of any funds, assets, securities, or other real or personal property, wherever located, of Defendants, and their subsidiaries and affiliates, whether owned by, controlled by, managed by or in the possession or custody of any of them, including assets held in business, corporate or partnership accounts in which defendants Rohner, Inteligentry, PlasmERG and PTP Licensing have an interest, except as otherwise ordered by the Court.

1   Order Granting Mot. for Prelim. Inj. 6, ECF No. 34.  Rohner has offered no compelling reason

2   why this provision of the Preliminary Injunction warrants reconsideration at this time.

3          Rohner also argues that the law firm of Gordon Silver be appointed as Receiver.  Mot. to

4   Remove Preliminary Inj. 6, ECF No. 169.  Rohner has previously opposed the SEC's motion to

5   have this Court appoint a receiver.  Rebuttal to SEC's Mot. to Hold Rohner in Civil Contempt

6   and Appoint Receiver, ECF No. 114; Rebuttal to Mem. in Supp. of SEC's Mot. to Hold Rohner

7   in Civil Contempt and Appoint Receiver, ECF No. 115.  Regardless, this matter does not warrant

8   revision of the Preliminary Injunction as it would not relieve any inequities in the order that have

9   arisen since its creation.

10          Rohner next comments on the impossibility of "within three calendar days of following

11   the service of this Order, . . . [p]rovid[ing] the Commission with a verified, written accounting,

12   signed by the Defendant under penalty of perjury, of all funds, assets and liabilities including: all

13   real and personal property exceeding $5,000 in value, located both within and outside the United

14   States," given that all of Rohner's records have been seized.  Mot. to Remove Prelim. Inj. 8–9,

15   ECF No. 169; see Order Granting Mot. for Prelim. Inj. 6, ECF No. 34.  Rohner claims he

16   foresaw this impossibility issue and raised it with the SEC prior to the Order's issuance, Mot. to

17   Remove Prelim. Inj. 8–9, ECF No. 169.  Based in part on the reasons offered by Rohner and for

18   the reasons discussed at the Hearing, the Court will modify Rohner's document production

19   obligations under the Preliminary Injunction to require Rohner to submit an affidavit identifying

20   assets and transfers to the best of his ability, unless he asserts a Fifth Amendment privilege.  See

21   supra section IV.A (describing in more detail the production requirements).

22          Therefore, Rohner's motion to remove the restraining order is denied. However, Rohner's

23   obligations of documentation production regarding assets are limited, as described supra section

24   IV.A, to require Rohner to produce documentation of asset transfers and assets that are currently

25   under his control or were under his control at any time after the seizure by the FBI.

26

27          **C.  SEC's Motion to Dismiss, ECF No. 50**

28          For the reasons given during the Hearing and the reasons described below, the Court

- 11 -

grants the SEC's motion to dismiss Rohner's counter-claims.

On June 14, 2013, Rohner filed a Counterclaim against the SEC in which he claimed "loss of business," "reduction in investors value," "unlawful detention of assets," "unlawful detention of funds," "restraint of trade," "failure to 'inform and correct,'" and "prejudice." Countercl. 1, 3, 4, 5, 6, and 7, ECF No. 48. In moving to dismiss, the SEC argued first that the counterclaim was compulsory and therefore untimely and second that such a counterclaim is barred by statute. In his Rebuttal, Rohner refuted neither of these claimed reasons for dismissal. ECF. No. 89. Instead, Rohner attacked the validity and veracity of the SEC's suit against Rohner and the other defendants. Id. The SEC did not file a reply. Because Rohner's counterclaim is statutorily barred, it must be dismissed.

"[C]onsolidation of a private action with one brought by the SEC without its consent is prohibited by statute." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332 n.17 (1979). Specifically, Section 21(g) of the Securities Exchange Act, as codified, states

> Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the [Securities and Exchange] Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g). As the text of the statute is clear, and there is no apparent contrary authority, this Court holds that Rohner's counterclaim is statutorily barred and must be dismissed.

### D. Rohner's Motion to Dismiss, ECF No. 183

For the reasons given during the Hearing and the reasons described below, the Court denies Rohner's motion to dismiss.

The SEC states, correctly, that Rohner's motion to dismiss should be denied as untimely. The Complaint was filed on February 28, 2013. ECF No. 1. Rohner filed answers to the complaint on March 12 and 13, 2013. ECF Nos. 28, 30, 31. At a hearing on August 5, 2013, the Court extended the deadline for Inteligentry, PlasmERG, and PTP to file responsive pleadings until October 4, 2013. On March 25, 2014, Rohner filed this motion to dismiss for failure to

state a claim.  ECF No. 183.

Rohner did not assert his motion to dismiss for failure to state a claim in his answer, as required by Fed. R. Civ. Proc. 12(b).  Furthermore, Rohner filed the instant motion to dismiss nearly a year after the appropriate deadline, pursuant to Fed. R. Civ. Proc. 12(a), and even six months after a deadline extension granted to the Corporate Defendants.  Consequently, the motion is very untimely and should be denied.

However, because Rohner is pro se, the Court will also review the merits of his argument. Rohmer argues "that the SEC has failed to provide any proof to support any allegation to provide any **Prima Facie** case proving and wrongdoing of any kind."  Mot. to Dismiss 1, 6, ECF No. 183.  Rohner then makes many arguments about the SEC's lack of proof and his disagreement with the SEC allegations.

Such arguments about proof, however, are not appropriate in a motion to dismiss, and it appears Rohner misunderstands what is required in a complaint and a motion to dismiss.  A complaint need not include "proof" of its allegations, rather it must give "sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 663 (emphasis added).  Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Wright et al., Federal Practice and Procedure § 1356 (3d ed.).

Here, to show a violation of Section 5 of the Securities Act, the SEC "must point to evidence that: (1) no registration statement was in effect as to the securities; (2) [defendant] sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce." S.E.C. v. Phan, 500 F.3d 895, 902 (9th Cir. 2007) (alterations in original) (quoting Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 212 (3d Cir.2006)).  Here, the SEC sufficiently alleged facts that Rohner violated Section 5(a) and 5(c) of the Securities Act.  Specifically, the SEC alleged that no registration statement for any of the companies in question was ever filed with the SEC.  Comp. ¶ 7, ECF No. 1.  Additionally, the SEC alleged that offers for sale were published on Defendants' websites and that sales were executed for the purchase of "stock"—a security

within the ambit of the Securities Act.  Compl. ¶¶ 17, 18, 21, ECF No. 1.  Further, the SEC alleged that Rohner controlled the content of Defendants' websites.  Compl. ¶ 17, ECF No. 1. Finally, the SEC alleged that sales were made through the means of interstate commerce, specifically including the Internet, to investors in several different states as well as internationally.  Compl. ¶ 17, ECF No. 1.  The Court finds that SEC has made out its prima facie sufficient to survive a motion to dismiss.

### E. Corporate Defendants' Motion to dismiss the Second and Fourth Causes of Action for Failure to Plead Fraud with Particularity, ECF No. 121

Defendants Inteligentry, PTP, and PlasmERG have moved to dismiss the second and fourth causes of action for failure to plead fraud with particularity.  For the reasons given during the Hearing and the reasons discussed below, the Court grants without prejudice the Corporate Defendants' motion to dismiss with regards to PTP but denies the motion with respect to Inteligentry and PlasmERG.

### 1. Extrinsic Materials

In deciding this motion to dismiss, the Court must look only to the complaint.  Generally, material beyond the pleadings is not considered during a 12(b)(6) motion. <u>Hal Roach</u>, 896 F.2d at 1555 n.19.  In its response, the SEC asks the Court to consider, however, the declaration of Christopher McLean, ECF No. 8.  While this declaration was filed on the same day as the Complaint, it shares little else with the Complaint.  It was not attached to the Complaint, the Complaint does not reference the declaration, and the declaration itself notably neglects to include the Complaint when it states "I make this declaration in support of the Commission's Motion for Temporary Restraining Order, Preliminary Injunction, and Other Relief."  ¶ 2. Consequently, this declaration was not properly included as part of the Complaint, and for the purposes of a 12(b)(6) motion, this Court cannot escape the general rule such extrinsic material must be disregarded.

The Court will thus necessarily limit its evaluation to only what is in, or properly attached

1    to, the Complaint.

2

3                          **2.  Fraud Particularity**

4          "In alleging fraud or mistake, a party must state with particularity the circumstances

5    constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

6    may be alleged generally."  Fed. R. Civ. P. 9(b).  "Rule 9(b) does not allow a complaint to

7    merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their

8    allegations when suing more than one defendant ... and inform each defendant separately of the

9    allegations surrounding his alleged participation in the fraud.'"  Swartz v. KPMG LLP, 476 F.3d

10   756, 764-65 (9th Cir. 2007) (alterations in original) (quoting Haskin v. R.J. Reynolds Tobacco

11   Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).  "[A] plaintiff must, at a minimum, 'identif[y]

12   the role of [each] defendant[ ] in the alleged fraudulent scheme.'"  Swartz, 476 F.3d at 765

13   (alterations in original) (quoting Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th

14   Cir. 1989)).

15         Here, the Complaint alleges facts with adequate specificity against Inteligentry and

16   PlasmERG, but not with respect to PTP.  The Complaint indicates misrepresentations appear "on

17   current and prior versions of the Inteligentry, PlasmERG, and PTP Licensing websites" (though

18   it fails to include any misrepresentation from the PTP website).  Comp. ¶ 23, ¶¶23(a)–(f), ECF

19   No. 1.  The Complaint then alleges specific website statements made by Inteligentry and

20   PlasmERG, such as, "We have on hand 12 engines and expect to have more by 'showtime' with

21   another min. 10 per manufacturer. . . All operational" and "Our expected per cylinder charge for

22   gases will be less than a dollar.  So for budgeting figure about Three dollars a year to run a 500

23   CC engine continual, pumping water, generating Power powering your Boat or ???"  Compl. ¶¶

24   23(b),(c), ECF No.1.  When combined with the allegation that "Defendants have produced an

25   operational engine," Compl. ¶ 24, ECF No. 1, these website statements identify, in at least one

26   substantial way, the "time, place, and specific content of the false representations as well as the

27   identities of the parties to the misrepresentations," made by Inteligentry and PlasmERG.  Swartz,

28   476 F.3d at 764.

1    The Complaint's allegations are insufficient, however, as to PTP.  Regarding PTP, the

2    Complaint actually alleges very little whatsoever, and in fact alleges only one specific activity or

3    statement by PTP.  See ¶ 29(b) ("'[T]he powerful Plasmic Transition Process (tm) [is] now

4    Patented by Inteligentry, our partner' (PlasmERG website as of January 28, 2013; PTP Licensing

5    website, as of April 26, 2012 and September 27, 2012).")  This alone does not sufficiently

6    identify the role of PTP in the alleged fraudulent scheme.  In its opposition, the SEC points to no

7    other specific allegations about PTP within the Complaint.  Instead, the SEC relies upon and

8    references the McLean Declaration.  Opp. to Corporate Entities Mot. to Dismiss 11, ECF No.

9    147 ("Also, contrary to Corporate Entities assertion, they were put on notice that PTP's website

10   also misrepresented that they had produced a running engine. See Declaration of Christopher

11   McLean, ¶ 14, Exhibit 12, Docket Nos. 8 and 8-4, served on Corporate Entities with the

12   Complaint.")  This reference is unavailing, since the Court has determined that it cannot consider

13   this Declaration.  The Complaint's second and fourth causes of action fail with respect to PTP.

14   Thus, the Court finds that the SEC's allegations are sufficiently particular with regards to

15   Inteligentry and PlasmERG, but that the SEC's allegations are not sufficiently particular with

16   regards to the role of PTP.  The Court therefore grants without prejudice the Corporate

17   Defendants' motion to dismiss with regards to PTP but denies the motion with respect to

18   Inteligentry and PlasmERG.  The SEC shall have twenty-one days from the date of this order to

19   amend its complaint (if it has not already done so in response to the Hearing rulings) to allege

20   facts with particularity with respect to fraud on behalf of PTP.

21

22   **F.  Rohner's Motions to Dismiss PlasmERG (Iowa) as a Party and Motion to Clarify PlasmERG, Inc (Iowa) Status in this Case, ECF Nos. 140 and 243**

23

24   For the reason given below and the reasons given at the Hearing, Rohner's motion to

25   dismiss PlasmERG (Iowa) and motion to clarify PlasmERG, Inc (Iowa) status in this case must

26   both be denied.

27   PlasmERG, Inc. (Iowa) is not a party to this case.  See Complaint ¶ 14, ECF No. 1

28   ("PlasmERG, Inc. ('PiasmERG') is a Nevada corporation Rohner formed in May 2011 with its

1    principal place of business at 3087 E. Warm Springs, Suite 100, Las Vegas, NV 89120 and its

2    corporate agent at 3087 E. Warm Springs, Suite 100, Las Vegas, NV 89120.") Thus, even if the

3    Rohner were authorized to file a motion on behalf of a corporation—which he is not—the Court

4    simply cannot dismiss a party who is not actually a party in the case.

5          Rohner's curious motion to clarify status, ECF No. 243, appears at first glance to merely

6    be an inquiry into PlasmERG (Iowa)'s role in the case, perhaps redundant with Rohner's motion

7    to dismiss PlasmERG (Iowa), ECF No. 140.  However, upon closer inspection the purpose of

8    this motion becomes less obvious.   In this motion, Rohner argues for the "inclusion of

9    PlasmERG, Iowa," and states that "until this court makes Rohner responsible for PlasmERT, Inc.

10   Iowa currently by law owned by Girouard, no evidence of any kind can be provided to the

11   court."  Motion to Clarify Status 6, 7, ECF No. 243.  Rohner goes on to say that "PlasmERG

12   Inc., Iowa and PlasmErg Inc, Nevada, if operational, would be, if anything, at best, competitors

13   as both would be working with similar technology and capabilities.  There is no 'implied or real'

14   contract between them . . . . The SEC cannot show any successor contract that continues any

15   activity between these two separate entities." Id. at 12 (emphasis removed).  Rohner, in his

16   conclusion, goes on to say, "[a]ny reference to any activity before May 2011 must be stricken

17   and all such information removed from this case." Id. at 16.  Thus, it appears this motion to

18   clarify seeks a dispositive ruling from the Court establishing as a matter of law the relation

19   between PlasmERG (Iowa) and PlasmERG (Nevada).  This Court cannot and will not do in

20   response to such a motion, at this time.

21         Therefore, Rohner's motions regarding PlasmERG-Iowa are denied without prejudice to

22   the issues being raised at a later time, when more facts are available.

23

24         **G. SEC's Motion for Partial Summary Judgment on the First Cause**
           **of Action, ECF No. 129**

25

26         The SEC moved for partial summary judgment only on the issue of Section 5(a) and 5(c)

27   violations (unlawful participation in the offer or sale of securities), against defendants Rohner,

28   Inteligentry, and PlasmERG.  At the Hearing, the Court indicated it intended to grant partial

     summary judgment with regards to the liability of Rohner and Inteligentry only, it intended to

deny partial summary judgment regarding remedies, and indicated it would take under consideration the matter of PlasmERG's liability.  For the reasons given during the Hearing and described below, this motion is now granted in part as to the liability of Rohner and Inteligentry, and denied in part as to the liability of PlasmERG and remedies against all parties.

## 1.  Securities Act Section 5 Liability

"In order to establish a Section 5 violation, [plaintiff] must point to evidence that: (1) no registration statement was in effect as to the securities; (2) [defendant] sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce."  S.E.C. v. Phan, 500 F.3d 895, 902 (9th Cir. 2007) (alterations in original) (quoting Berkeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 212 (3d Cir.2006)).

## 2.  Rohner Liability

Undisputed facts demonstrate that Rohner offered to sell and sold securities.  An investor, Colin Malaker, testified that Rohner sold him investments.  Decl. of Colin Malaker ¶ 10, 11 ("Rohner encouraged me to invest quickly and said my money would be used to develop the engine. . . . He offered me a block of stock, with options to purchase more stock, if I invested within 15 days.").  Rohner, in this Response to the SEC's motion, says "NO stock was offered by the company. . ."  Rebuttal to SEC's Memo. in Support of Partial Summ. J. 4, ECF No. 142.  However, such an unsworn statement does not create an issue of material fact.  Furthermore, later in that same document Rohner acknowledges the sale of investments:

> Rohner . . . offered others, of like mind, the opportunity to help the group fund the development of this new Technology either with money or time. The Investment was guaranteed by Rohner's Pledge of his personal stock against their investment when complete. . . . Approximately **140** persons . . . have invested time or money into Inteligentry. . . . The money investors paid in for development was deposited directly, checks, cash or through wire transfers. . . . Rohner . . . signed all stock certificates issued as collateral . . . . He also signed Contract to Purchase Inteligentry securities . . .

Id. at 6–7.  More importantly, in his sworn deposition, Rohner admitted to selling Inteligentry investments.  Rohner Dep. 157:15–18 ("In Inteligentry, we sold investment blocks, yes.  We sold

1    investments, there's no question about it.  And if that turns out to be something that should have

2    been registered, then we made a mistake.")  Furthermore, Rohner signed the Inteligentry stock

3    certificates.  Mot. For Partial Summ. J. Exhibit E, p. 7, ECF No. 131-6; Rohner Dep. 158:9–20.

4         Undisputed facts demonstrate that no registration statement was in effect as to these

5    securities.  The SEC searched its records and found no registration statements for Rohner,

6    Inteligentry, PlasmERG, or PTP.  Decl. of Larry Mills 1.  In his response to the SEC's motion

7    for partial summary judgment, Rohner acknowledged "It is true '*no registration statement for*

8    *any of the companies was ever filed with the SEC*.'"  Rebuttal to SEC's Memo. in Support of

9    Partial Summ. J. 3, ECF No. 142.  Moreover, in his deposition, Rohner acknowledged several

10   times that neither he nor any of his companies had registered securities offerings with the SEC.

11   Rohner Dep. 154:16–26,157:9–20, 159:6–9.  In his Response to the SEC's motion, Rohner does

12   not suggest there was registration, he merely disputes the need to register.  Rebuttal to SEC's

13   Memo. in Support of Partial Summ. J. 10–11, ECF No. 142.

14        Undisputed facts demonstrate that the sale or offer was made through interstate

15   commerce, specifically the internet.  For example, during times when stock was being sold,

16   Inteligentry's website stated "ATTENTION: Anyone that wishes to join us. A [sic] Information

17   package is available. Contact Tana at stockholder@inteligentry.com or call – 702-204-8458."

18   McLean Decl. Ex. 16, p29 (emphasis omitted).  Elsewhere, the website stated "Stock will stay

19   available till we start the training classes, as before."  Id. at 33 (emphasis omitted).  And,

20   "Remember, Stock will be unavailable when we start our Training, available til then. ....!!!!!!"

21   Id. at 6 (emphasis omitted).  The Inteligentry website indicated John Rohner held copyright and

22   maintained the documents, Id. at 9, and Rohner in his Response acknowledged his control of

23   these sites.  Rebuttal to SEC's Memo. in Support of Partial Summ. J. 6, ECF No. 142.  Also, an

24   investor testified that Rohner emailed him an information pack including a business plan and a

25   spreadsheet of financial projections as part of an offer to purchase stock.  Decl. of Colin Malaker

26   ¶ 12.

27        At the Hearing, Rohner mentioned the Private Placement exception and The JOBS Act.

28   However, Rohner did not argue any exception directly or effectively or explain how any such

1    exception might apply at the Hearing or in any papers.  "Once the SEC introduces evidence that

2    a defendant has violated the registration provisions, the defendant then has the burden of proof in

3    showing entitlement to an exemption." S.E.C. v. Murphy, 626 F.2d 633, 641 (9th Cir. 1980).

4    Though not explicit, Rohner's reference to "private placement" appears to refer to "Regulation

5    D" exemptions under 17 CFR § 230.500 et seq.  However, the Court finds that Rohner has failed

6    to prove an applicable Regulation D offerings exception.  In addition, neither Rohner, nor the

7    SEC, nor the Corporate Defendants have indicated that a Form D notice of sales was ever filed as

8    required of any "issuer offering or selling securities in reliance on [Regulation D exceptions]."

9    17 C.F.R. §  230.503(a)(1).

10        The Jumpstart our Business Startups Act ("JOBS Act") was signed into law in April

11    2013.  PL 112-106, April 5, 2012, 126 Stat 306; see generally 50A N.J. Prac., Business Law

12    Deskbook § 30:3 (overviewing the JOBS act).  This date is well after much (though not all) of

13    the alleged unlawful securities transactions in this case.  See Compl. ¶ 1, ECF No. 1.  More

14    importantly, Rohner has not established, and the Court does not see, how the JOBS Act might

15    exempt Rohner or the Corporate Defendants.  The most likely provision—the crowdfunding

16    exemption under Title III of the JOBS Act—has yet to be implemented by the SEC and therefore

17    is not yet a valid exemption.  Moreover, once rules are adopted, the crowdfunding exemption

18    requires offerings to be transacted through a compliant broker or funding portal, something that

19    has not happened here.  The Court finds no exemption applies.

20

21                          **3.  Inteligentry Liability**

22        In its Response, Inteligentry concedes liability.  "Defendant Inteligentry cannot produce

23    evidence to defeat the SEC's claims that it engaged in an unregistered offer and sale of its

24    securities."  Opp. to SEC's Mot. for Partial Summ. J. 3:5–7, ECF No. 151.  "Defendant

25    Inteligentry cannot produce evidence that would create a genuine issue of fact regarding its offer

26    and sale of unregistered Inteligentry shares.  The Court agrees that there are no issues of material

27    fact regarding Inteligentry, as acknowledged by Inteligentry.   Thus, for the reasons given at the

28    Hearing and the reasons discussion above, supra section IV.G.2 (describing the liability of both

Rohner and Inteligentry), the Court finds that the record supports summary judgment against Inteligentry and grants partial summary judgment as to Inteligentry's liability.

However, Inteligentry does believe genuine issues of fact exist regarding Plaintiff's entitlement to remedies.  Id. at 10:15–18.  The Court also finds the matter of remedies inadequately settled for summary judgment at this time.  As described in more detail below, infra sections IV.G.4–5, the Court finds a genuine dispute of material fact regarding which corporations and individuals have what assets and as a consequence cannot at this point make an accurate determination as to remedies.

### 4.  PlasmERG Liability

The Court cannot determine as a matter of law PlasmERG's liability at this time.

First, a number of facts are undisputed.  It is undisputed that PlasmERG-Iowa was incorporated in Iowa on November 24, 2008.  SEC's Statement of Material Facts ¶ 2, ECF No. 131; Rebuttal to SEC's Memo. in Support of Partial Summ. J. 5, ECF No. 142.  It is also undisputed that PlasmERG-Iowa was administratively dissolved in November 2011.  After this date, PlasmERG-Iowa continued its corporate existence in inactive status only to "wind up and liquidate its business and affairs."  Iowa Code § 490.1421(3).  It is also undisputed that PlasmERG (Nevada) was formed on May 5, 2011 and that Inteligentry was formed on May 19, 2011.  SEC's Statement of Material Facts ¶¶ 4, 5, ECF No. 131; Corp. Def's Resp. to SEC's Mot. For Summ. J. 6:16–19, ECF 151.  It is also undisputed that PlasmERG-Iowa shareholders were granted Inteligentry stock.  SEC's Statement of Material Facts ¶ 9, ECF No. 131.

The question before this Court is whether PlasmERG taken on the liability for PlasmERG-Iowa.  Considering all inferences in light of the non-moving party, this Court cannot in this motion for summary judgment find successor liability on the part of PlasmERG.

The rules of successor liability vary by state.  For the reasons given, this Court applies Nevada law to the issue of successor liability.  As a threshold matter, Nevada follows the Second Restatement regarding choice of law in tort and contract cases.  Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark, 134 P.3d 111, 116 (Nev. 2006);

Progressive Gulf Ins. Co. v. Faehnrich, 327 P.3d 1061, 1063 (Nev. 2014). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. . . ." Restatement (Second) of Conflict of Laws § 145 (1971). With respect to the issues, here, Nevada has the most significant relationship. Rohner was a resident of Nevada during most relevant times. All of the Corporate Defendants are all incorporated in Nevada and, to whatever extent they sold securities (the conduct causing the injury), they did so from within Nevada. Furthermore, the Defendants' business and development operations were all centered in Nevada. Nevada, also, has an interest in regulating its corporate citizens, and a corporate citizen of Nevada would expect to be governed by Nevada corporate laws. Importantly, because Iowa and Nevada have both adopted the traditional successor liability exceptions, there is no policy conflict between the two. Compare Vill. Builders 96, L.P. v. U.S. Labs., Inc., 112 P.3d 1082, 1087 (Nev. 2005) with Pancratz v. Monsanto Co., 547 N.W.2d 198, 200 (Iowa 1996).

"Under traditional rules of successor liability, asset purchasers are not liable as successors unless one of the following four exceptions applies: (1) The purchasing corporation expressly or impliedly agrees to assume the liability; (2) The transaction amounts to a 'de-facto' consolidation or merger; (3) The purchasing corporation is merely a continuation of the selling corporation; or (4) The transaction was fraudulently entered into in order to escape liability." Louisiana-Pac. Corp. v. Asarco, Inc., 909 F.2d 1260, 1263 (9th Cir. 1990), overruling recognized by A.O. Smith Corp.v. Rheem Mfg. Co., 134 F.3d 376 (9th Cir. 1998); accord Vill. Builders, 112 P.3d at 1087; Pancratz, 547 N.W.2d at 200.

The SEC argues that PlasmERG is the successor to PlasmERG-Iowa under the "mere continuation" test (prong three) of the exceptions to successor non-liability. Reply to Def. Corps' Opp. 5, ECF No. 156.

"Historically, a plaintiff must meet the following two requirements to justify bringing a sale of assets within the purview of the mere continuation exception to the general rule: (1) only one corporation remains after the transfer of assets; and (2) there is an identity of stock, stockholders, and directors between the two corporations." Vill. Builders, 112 P.3d at 1090-91.

In support of its contention, the SEC argues that Rohner was in charge of both PlasmERG and PlasmERG-Iowa, that Rohner transferred the activities of PlasmERG-Iowa to PlasmERG and Inteligentry, that Rohner opened the PlasmERG and Inteligentry bank accounts with money taken from PlasmERG-Iowa, that PlasmERG-Iowa investors were given Inteligentry stock, that PlasmERG is wholly owned by Inteligentry, that PlasmERG and PlasmERG-Iowa had the same website, and that PlasmERG-Iowa was dissolved after Rohner moved to Nevada.  SEC's Reply to Def. Corps' Opp. 5–6, ECF No. 156.

For three reasons, the Court is not persuaded to find successor liability under this theory at this motion for summary judgment stage.  First, while it is clear there is an identity of directors between PlasmERG-Iowa and PlasmERG (i.e. Rohner), the SEC has failed to demonstrate there exists an identity of shareholders.   PlasmERG-Iowa shareholders were granted shares of *Inteligentry*, not PlasmERG.  This situation may weigh in favor of finding Inteligentry to be a successor-in-interest—a question not before this Court—but does not tip the balance in favor PlasmERG successor liability.   Furthermore, Rohner claims he transferred his shares in PlasmERG-Iowa to Dr. Michael Girouard.  <u>See</u> Answer, ECF No. 31

Second, the SEC cannot establish that only one corporation existed after the sale. As described above, both PlasmERG and PlasmERG-Iowa existed after the alleged transfer of assets to PlasmERG and Inteligentry.

Third, the disposition of the assets and liabilities of PlasmERG-Iowa is highly disputed. Rohner claims he lost control of PlasmERG-Iowa to a former-investor-turned-competitor, Dr. Michael Girouard.  At the Hearing, Rohner argued that Dr. Girouard had taken PlasmERG-Iowa over and folded it into a new company, Unity International.  Rohner made this claim as early as his Answer, to which he attached several letters between Rohner and Dr. Girouard indicating Rohner's resignation from PlasmERG and transfer of assets to Dr. Girouard as well as court filings from an action on promissory note filed by Dr. Girouard against Rohner.  Answer Exs. 3, 5b, ECF No. 31; ECF No. 31-1.  Furthermore, in his deposition, Rohner said "There isn't any Plasmerg Iowa to me. . . . Not only is it my position, but it's the position of the Court in Iowa who specifically told his attorney that Gerard owned Plasmerg Iowa."  Rohner Dep. 155:13–

157:8.  Rohner and the Corporate Defendants made this argument again in their responses to the SEC's motion for summary judgment.  Rebuttal to SEC's Memo. in Support of Partial Summ. J. 5, ECF No. 142; Opp. to SEC's Mot. for Partial Summ. J. 8:14–18, ECF No. 151.  The SEC does not address this argument, however, in its reply.   SEC's Reply to Def. Corps' Opp., ECF No. 156.

Taking these three issues together, Defendants have identified genuine issues of fact with respect to liability of PlasmERG as it relates to the conduct of PlasmERG-Iowa.  However, importantly, the Court is also not affirmatively finding that PlasmERG and PlasmERG-Iowa are wholly distinct entities.  While it is possible—perhaps even likely—that PlasmERG bears some liability, the Court at this time cannot determine as a matter of law precisely when and for what PlasmERG might be liable.  The SEC's Motion for Summary Judgment with regard to the liability of PlasmERG is denied without prejudice at this time.

## 5.  Remedies

For the reasons stated in the Hearing and the reasons discussed in the preceding sections, the Court finds genuine issues of material fact exist regarding which corporations and individuals have what assets.  Consequently, the Court cannot at this point make an accurate determination as to the allocation of liability and the appropriate remedies.  Accordingly, the Court denies the SEC's Motion for Summary Judgment with regards to all remedies requested, without prejudice to the issues being re-raised when more information becomes available.

## H. Rohner's Motion to Hold the SEC in Civil Contempt, ECF No. 179

For the reasons given at the Hearing and described below, the Court does not believe there is a factual or legal basis for holding the SEC in contempt, and therefore denies Rohner's Motion to Hold the SEC in Civil Contempt.

Rohner has moved to hold the SEC in civil contempt "due to the SEC's willful disobedience of the Court's Asset Freeze and Preservations Order issued as part of it's [sic] Restraining Order . . . .  As well as the courts [sic] order . . . stipulating a 'stay' and other

1   encroachments."   Mot. to Hold the SEC in Civil Contempt 1, ECF No. 179.   Rohner also

2   suggests that the SEC usurped the Court's scheduling ability.  Id. at 8.

3        The SEC could not violate a stay because none was granted.   On August 5, 2013, the

4   Court granted an extension of time for counsel to make an appearance and authorized the release

5   of $20,000 to retain such counsel.   Minutes, ECF No. 99; Order 1:16–22, ECF No. 101.   Once

6   retained, counsel would be given until October 4, 2013 to file responsive pleadings, Order 2:5–7,

7   ECF No. 101.  Rohner contends that this included a stay of 90 days.  Mot. to Hold the SEC in

8   Civil Contempt 6–7, ECF No. 179.   In fact, in the 90 days following the August 5, 2013 hearing,

9   *both* the SEC and Rohner filed motions.  E.g., Mot. for Sale of Stored Materials, ECF No. 104

10  (filed on Aug. 28, 2013); Mot. to hold Rohner in Civil Contempt and to Appoint a Receiver, ECF

11  No. 109 (filed on Sept. 6, 2013); Mot. to Impeach, ECF No. 112 (filed on Sept. 9, 2013).

12  Importantly, neither the Minutes nor the Order included a stay on the proceedings.   Minutes,

13  ECF No. 99; Order, ECF No. 101.  Thus, neither party has violated any of the Court's orders by

14  filing their respective motions.

15        Nor has the SEC usurped the Court's ability to schedule hearings.  Rohner alleges that the

16  SEC served Rohner for an appearance on March 21, after he had moved to reschedule the

17  hearing.  Mot. to Hold the SEC in Civil Contempt 8, ECF No. 179.  However, any such subpoena

18  did not stop the court from, on March 18, rescheduling the hearing from March 21 to March 31.

19        Rohner further alleges that the SEC violated the Temporary Restraining Order and

20  Preliminary Injunction by not telling Rohner where assets were being stored.  Mot. to Hold the

21  SEC in Civil Contempt 10, ECF No. 179.  However, Rohner points to no specific provision of

22  the injunctions that imposes such a requirement on the SEC.    Sections XII and XIII of the

23  Preliminary Injunction, which seem most appropriate, limit only "Defendants, their officers,

24  agents …" and "each Defendant," respectively.    Order Granting Motion for Preliminary

25  Injunction 8, 9, ECF No. 34.

26        Rohner alleges that the SEC unlawfully seized ten engines held by Dan Nims.  Mot. to

27  Hold the SEC in Civil Contempt 9, ECF No. 179.  If Daniel Nims has lost personal property to

28  the SEC that was not properly subject to the injunction, then Daniel Nims may have standing to

1  file a complaint against the SEC.  However, Rohner has presented no evidence establishing his

2  standing to challenge any such seizure on behalf of Daniel Nims.

3       The Court, having reviewed Rohner's motion to hold the SEC in contempt, finds no

4  "clear and convincing evidence that the contemnors violated a specific and definite order of the

5  court." In re Bennett, 298 F.3d at 1069.  This motion is denied.

6

7  ### I.  SEC's Motion for Partial Summary Judgment on the Second, Third, Fourth, and Fifth Causes of Action, ECF No. 233

8

9       The SEC has moved for partial summary judgment against Rohner on the Second, Third,

10  Fourth, and Fifth causes of action and against Inteligentry, PTP, and PlasmERG on the Second

11  and fourth causes of action.  At the Hearing, the Court indicated it intended to grant partial

12  summary judgment with regards to the liability of Rohner and Inteligentry only, it intended to

13  deny partial summary judgment regarding remedies, and indicated it would take under

14  consideration the matter of PlasmERG's and PTP's liability.  For the reasons given during the

15  hearing and described below, this motion is now granted in part as to the liability of Rohner and

16  Inteligentry, and denied in part as to the liability of PlasmERG and PTP and as to remedies

17  against all parties.

18

19  #### 1.  PTP

20       Because the Court has granted Corporate Defendant's Motion to Dismiss, ECF No. 121,

21  as to PTP without prejudice, supra IV.E, this motion for partial summary judgment against PTP

22  is denied, without prejudice.

23

24  #### 2.  PlasmERG

25       For the reasons discussed in the Hearing and also the reasons previously given in

26  discussion of SEC's Motion for Partial Summary Judgment on the First Cause of Action, supra

27  IV.G.4, this motion for partial summary judgment against PlasmERG is denied.

28

### 3.  Inteligentry

In their response brief, the Corporate Defendants acknowledge, "summary judgment on liability issues may be appropriate as to Inteligentry," and do not dispute the material facts the SEC demonstrates support such a finding.  Opp. to SEC's Mot. for Partial Summ. J. 2:26–27, ECF No. 250.  For this reason and the reasons discussed below, <u>infra</u> IV.I.4 (describing the liability of Inteligentry as well as Rohner), this motion for partial summary judgment is granted with regards to Inteligentry's liability.

### 4.  Rohner

For the reasons discussed in the Hearing and also given here, the motion for partial summary judgment is granted as to Rohner on counts two and four and as to Rohner on counts three and five for aiding and abetting Inteligentry.

#### a.  Causes of Action Two and Four

Section 10(b) of the Exchange act and Rule 10b-5 enacted thereunder and "prohibit some of the same conduct."  <u>United States v. Naftalin</u>, 441 U.S. 768, 778 (1979).  Specifically, "Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b–5 . . . forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce."  <u>S.E.C. v. Dain Rauscher, Inc.</u>, 254 F.3d 852, 855 (9th Cir. 2001).  Thus, a violation requires establishing four elements: 1) a material misrepresentation, 2) in connection with the purchase of a sale or security, 3) with scienter, and 4) in interstate commerce.  <u>S.E.C. v. Todd</u>, 642 F.3d 1207, 1215 (9th Cir. 2011).

Here, Rohner and Inteligentry have either been found to have sold or have conceded to have sold securities through interstate commerce.  <u>See</u> <u>infra</u> section IV.G.  Consequently, the second and fourth elements of the Section 10(b) and Section 17(a) (in connection with the purchase of a sale or security and in interstate commerce) need not be explicitly discussed, again.

Rohner and Inteligentry made several material misrepresentations.  They claimed there were working engines, when in fact there were not.  On the Inteligentry website, authored and

maintained by Rohner, several claims were made to have a running plasma engine at the time when Inteligentry was offering stock for sale.  For example, "[t]he fact is that, we have engines operational after 4 years not 34 years and without costing anyone their investment." McLean Decl. ¶ 19, Ex.17.  In his deposition, Rohner acknowledged "I make that statement all the time." Rohner Dep. 183:3–12.  Rohner also, in his deposition, acknowledged saying on his website, "[w]e have on hand 12 engines and expect to have 60 more by show time with another minimum ten per  manufacturer, with 11 now in stock, each for shipment after the show.  All operational." And "We are now testing multiple operational engines."  Rohner Dep. 186:3–8, 187:3–7.  In his deposition, Rohner also acknowledged these statements were false.  Rohner Dep. 186:12–20 ("We had 12 engines that should have been operational but they failed. . . . No, they weren't operational."), 187:10–15 ("It depends on your definition of 'operational.'  We had engines that did seal up, but we wouldn't get them to work with the electronics. . . . So they were operational. We just hadn't been able to make them run yet.").  Statements about having running engines when there were none are clearly misstatements.

In his response, Rohner does not dispute nor provide any evidence contrary to the SEC's evidence that there were no running engines.  Rather Rohner states "there is no requirement for showing any engine to the public for any reason by the company."  Rebutal to SEC's Mot. for Partial Summ. J., 10–11, ECF No. 252.  Later, in response to several of the SEC's claims about non-working engines, Rohner merely answers, "NOT PROVEN FALSE!"  Id. at 22.  Rohner does not actually say he had running engines: only that the SEC has not shown that he doesn't. This is insufficient.  Because Rohner has failed to provide any evidence that he actually had running engines, it is undisputed that Rohner's statements about having running engines were false.  Whether Rohner and Inteligentry had running engines or not is clearly a fact material to any potential investor.

Rohner and Inteligentry also misstated having patents on the engine design.  The Inteligentry website, again authored and maintained by Rohner, included such statements as "We OWN Patent(s) and have pending patent(s), we have *Protected* our discoveries the 'proper' way & we will enforce our ownership as needed," and "So Inteligentry knows how the process works,

has verified it and protected it with a full fledged **REAL *Patent***. The name for the process 'Plasmic Transition Process' (tm) has also been trademarked, for universal protection." McLean Decl. ¶ 19, Ex. 17.  Investors also testified that Rohner told him about patents: "I learned after I invested that Rohner did not have any patents related to the engine and that he was merely preparing a final application for a U.S. parent.  This surprised me, because Rohner had told me explicitly before I invested that he owned a patent for the engine technology."  Decl. of Michael Paul Girouard ¶ 14.  "Rohner told me that he held a patent for the engine in the United States and that the patent alone was worth billions of dollars." Decl. of Colin Malaker ¶ 7.  At his deposition, Rohner acknowledged that he had claimed to have had a patent on the process and the control of the engine.  Rohner Dep. 197:9–14.

However, neither Rohner nor Inteligentry actually had any patents.  On November 18, 2009 Rohner and PlasmERG filed Patent Application number 12/592,117 for the Plasmic Transition Process Motor with the USPTO.  McLean Decl. ¶ 22, Ex. 20A.  On October 10, 2012 the USPTO rejected Rohner's Patent Application number 12/592,117.  McLean Decl. ¶ 22, Ex. 20A.  On June 19, 2013, in response to Rohner's request for reconsideration, the USPTO again rejected Rohner's Patent Application number 12/592,117.  Ramrattan Decl. ¶ 28, Ex. 39.  On December 23, 2013, in response to Rohner's second request for reconsideration, the USPTO again rejected Rohner's Patent Application number 12/592,117.  Ramrattan Decl. ¶ 28, Ex. 36. On July 29, 2014, the USPTO issued a notice that Rohner's application regarding Patent Application number 12/592,117 had been rejected again and that "THIS ACTION IS MADE FINAL." Ramrattan Decl. ¶ 28, Ex. 35.

Rohner does not deny that he misstated having patents.  In his response, Rohner instead claims he was unaware of his patent application's status.  Rohner claims he "DID NOT Know His filed Patents and Trademarks Were Not Issued . . . [and] believed he did have a parent." Rohner's Rebuttal and Correction of the SEC Statement of Material Facts 23–33, ECF No. 251. In response to the statement that the USPTO considered Rohner's application abandoned, Rohner stated, "In reality, Rohner could no longer continue to tap funds from friends to fight the many '*hired guns*' the opposition had working to kill this."  Id. at 35.  In his deposition, Rohner

also admitted to having only a patent application but not having an actual patent, because he misunderstood the process. Rohner Dep. 202:31–207:6. Again, Rohner does not dispute that he said he had patents when he in fact had none, so there is no dispute about these being misleading statements. Whether Rohner or Inteligentry had patents is a matter of material interest to a potential investor.

Rohner and Inteligentry made these material misrepresentations with scienter. "[T}he term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). Recklessness may satisfy scienter element in such actions. Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568 (9th Cir. 1990). Rohner knew, and admits he knew, his statements were false. As described above, Rohner described having running engines when he did not. Rohner either knew these statements about running engines were false and misleading or was consciously reckless in not knowing. Similarly, Rohner made claims about having patents when he in fact had none. Rohner claims this was a misunderstanding, but this Court finds it implausible that an engineer, or any other reasonable person (as the Court finds Rohner to be), would be unable to understand the various letters indicating his patent application had been rejected. The letter mailed by the USPTO states in its conclusion, "Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action." Ramrattan Decl. ¶ 28, Ex. 35. Furthermore, Rohner has successful read and responded to several prior correspondence from the USPTO. E.g., Ramrattan Decl. ¶ 28, Ex. 36 (exhibiting a similar, but non-final USPTO communication to which Rohner filed a response).

Because Rohner made material misrepresentations, in connection with the purchase of a sale or security, with scienter, and through interstate commerce, summary judgment on the second and fourth causes of actions is granted.

### b.  Causes of Action Three and Five

In order to establish aiding and abetting, the SEC must show 1) the corporation violated the relevant securities laws; 2) Rohner had knowledge of the primary violation and of his or her own role in furthering it; and 3) Rohner provided substantial assistance in the primary violation.

1    Ponce v. S.E.C., 345 F.3d 722, 737 (9th Cir. 2003).

2         Here, it has already been established that Inteligentry violated securities laws.  See supra

3    section IV.I.3.  Moreover, Rohner does not dispute his role in putting the false and misleading

4    statements on Inteligentry's website.  Additionally, the Court finds that Rohner certainly had

5    knowledge, or at least was reckless in not recognizing, the misleading nature of the statements he

6    made regarding running engines and patents.  Third, Rohner undeniably played a major role in

7    posting information on the websites for current and potential investors, communicating directly

8    with current and potential investors, and ultimately signing the securities delivered to investors.

9    As President of Inteligentry, Rohner played an essential and integral role in Inteligentry's

10   violation of Exchange Act section 10(b) and Rule 10b-5 and Securities Action section 17(a).

11        For these reasons, summary judgment against Rohner for aiding and abetting Inteligentry

12   is granted.

## 5.  Remedies

15        For the reasons stated in the Hearing and the reasons discussed in the preceding sections

16   on PTP and PlasmERG, the Court finds genuine issues of material fact exist regarding which

17   corporations and individuals have what assets.  Consequently, the Court cannot at this point

18   make an accurate determination as to disgorgement or the allocation of liability.  Accordingly,

19   the Court denies the SEC's Motion for Summary Judgment with regards to all remedies

20   requested, without prejudice to the issues being re-raised after a receiver has marshalled the

21   assets and remedies can be meaningfully calculated.

## J.  Corporate Defendants' Motion for Instruction Regarding Returned Seized Property and Rohner's Motion to have Returned Seized Property Released, ECF Nos. 178 and 246

25        As discussed in the Hearing, Gordon Silver is ordered to hold onto any materials already

26   received or received in the future pending the appointment of the receiver.  Upon appointment of

27   the Receiver, Gordon Silver will hand over the materials to the Receiver.  Alternatively, if the

28   parties agree to a disbursement—or if the court orders a disbursement—before the appointment

of a receiver, the materials will be distributed accordingly.

Consequently, Rohner's Motion to have Returned Seized Property Released, ECF Nos. 246, is denied. All assets, documents, and physical property will be placed in the possession of the Receiver who will allow both parties access to any information necessary until the case is resolved.

### K. Corporate Defendants' Motions for Release of $24,341.58 and $12,846.25 to Pay Attorney's Fees, ECF Nos. 158 and 215, and Rohner's Motions to Release Frozen Funds to Pay Attorney Fees and for an Order to Release Frozen Funds to Pay Bills, ECF Nos. 257 and 184

For the reasons discussed in the Hearing, the matter of attorney's fees and other costs will be taken up pending the appointment of a Receiver and subsequent cataloging and marshalling of assets. Therefore, ruling on Corporate Defendants' Motions for Release of $24,341.58 and $12,846.25 to Pay Attorney's Fees is denied without prejudice to being re-raised. Similarly, Rohner's motions to release frozen funds are denied without prejudice to being re-raised.

In addition to these reasons, because Rohner is not seeking the release of funds for his own attorney fees, and he is not authorized to file motions on behalf of the Corporate Defendants, Rohner's motion to release frozen funds for attorney's fees must also be denied.

## V. CONCLUSION

Accordingly,

1. IT IS ORDERED that SEC's Motion to Dismiss Rohner's Counter-Claims, ECF No. 50, is GRANTED.

2. IT IS FURTHER ORDERED that the SEC's Motion to Hold Rohner in Civil Contempt and to Appoint a Receiver, ECF No. 109, is GRANTED in part and DENIED in part. The motion for civil contempt is DENIED. The motion to appoint a receiver is GRANTED, and the appointment of the Receiver is STAYED pending a status conference.

3.  IT IS FURTHER OREDERED that a Statue Conference is set for **April 13, 2015 at 10:00 a.m.**

4.  IT IS FURTHER ORDERED that Rohner will, within one week of this order, if he has not already done so, deliver to the SEC documentation of all Rohner's current assets, the assets Rohner had at the time of the restraining order and seizure, and whatever physical or intellectual property, accounts, and other assets have been transferred to other individuals or entities.

5.  IT IS FURTHER ORDERED that the Corporate Defendant's Motion to Dismiss, ECF No. 121, is GRANTED IN PART as to PTP without prejudice, and DENIED IN PART as to Inteligentry and PlasmERG.  The SEC shall have twenty-one days from the date of this Order to file an amended complaint alleging fraud by PTP with adequate specificity if it has not already done so.

6.  IT IS FURTHER ORDERED that the SEC's Motion for Summary Judgment, ECF No. 129, is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to the liability of Rohner under the first cause of action, GRANTED as to the liability of Inteligentry under the first cause of action, DENIED as to the liability of PlasmERG under the first cause of action, and DENIED as to any and all remedies.

7.  IT IS FURTHER ORDERED that Rohner's Motion to Dismiss PlasmERG (Iowa) as a Party, ECF No. 140, is DENIED without prejudice.

8.  IT IS FURTHERE ORDERED that a ruling on Corporate Defendants' Motions for Release of $24,341.58 to Pay Attorney's Fees, ECF No. 158, is DENIED without prejudice.

9.  Rohner's Motion to Remove Restraint Order, ECF No. 169, is DENIED.

10. Corporate Defendants' Motion for Instruction Regarding Returned Seized Property and Rohner's Motion to have Returned Seized Property Released, ECF No. 178, is GRANTED.  Corporate Defendants' counsel is ordered to hold onto any material received until a receiver is appointed and turn over all material to the receiver by April 3, 2015.

11. IT IS FURTHER OREDERED that Rohner's Motion to Hold the SEC in Civil Contempt, ECF No. 179, is DENIED.

12. IT IS FURTHER ORDERED that Rohner's Motion to Dismiss, ECF No. 183, is DENIED.

13. IT IS FURTHERE ORDERED that a ruling on Corporate Defendants' Motions for Release of $24,341.58 to Pay Attorney's Fees, ECF No. 158, is DENIED without prejudice.

14. IT IS FURTHER ORDERED that Rohner's Motion for an Order to Release Frozen Funds to Pay Bills, ECF No. 184, is DENIED without prejudice.

15. IT IS FURTHER ORDERED that ruling on Corporate Defendants' Motions for Release of $12,846.25 to Pay Attorney's Fees, ECF No. 215, is DENIED without prejudice.

16. IT IS FURTHER ORDERED that SEC's Motion for Partial Summary Judgment on the Second, Third, Fourth, and Fifth Causes of Action, ECF No. 233 is GRANTED in part and DENIED in part.  The motion is GRANTED as to the liability of Inteligentry for the second and fourth causes of action, GRANTED as to the liability of Rohner for the second and fourth causes of action, GRANTED as to the liability of Rohner for the third and fifth causes of action for aiding and abetting Inteligentry only, DENIED as to all claims against PTP, DENIED as to all claims against PlasmERG, and DENIED as to any and all remedies.

17. IT IS FURTHER ORDERED that Rohner's Motion to Clarify PlasmERG, Inc (Iowa) Status in this Case, ECF No. 243, is DENIED without prejudice.

18. IT IS FURTHER OREDERED that Rohner's Motion to have Returned Seized Property Released, ECF No. 246, is DENIED.

19. IT IS FURTHER ORDERED that Rohner's Motion to Release Frozen Funds to Pay Attorney Fees, ECF No. 257, is DENIED.

Dated: March 31, 2015.

_____
Richard F. Boulware, II
United States District Court